Filed 5/3/16  In re K.S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.S., a Person Coming Under the Juvenile Court Law. | H042769 (San Benito County Super. Ct. No. JV-14-00024) |
| SAN BENITO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.S.,<br><br>        Defendant and Appellant. | |

A.S. (mother) appeals from the juvenile court's six-month status review order maintaining her daughter K.S. in the care and custody of respondent San Benito County Health and Human Services Agency (Agency).  Mother also challenges the juvenile court's finding that she had been provided or offered reasonable reunification services.  As we will explain, substantial evidence supports the finding that the return of K.S. to mother would create a substantial risk of detriment to K.S.'s safety, protection, or physical or emotional well-being, and we will affirm that order.  Although the reasonable services finding is not appealable, we will review the finding as if raised by a petition for writ of mandate and also conclude it is supported by substantial evidence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Just shy of her fifteenth birthday, K.S. was detained in December 2014 after mother disputed an assessment by K.S.'s mental health care provider that K.S. was not a danger to herself or others and did not qualify for an involuntary psychiatric hold. Mother refused to take custody of K.S., and the Agency commenced dependency proceedings.  The trial court assumed jurisdiction under Welfare and Institutions Code section 300, subdivision (c),[1] finding that K.S. suffered or was at risk of suffering serious emotional damage because she had no parent capable of providing appropriate care. After temporary placement in a foster home, K.S. was placed with her biological aunt in Sacramento, and the court ordered that reunification services be provided to mother. Mother supported K.S.'s placement with her aunt.  Before the jurisdiction hearing she had made arrangements for K.S. to live with the aunt until mother could obtain a job transfer and relocate to Sacramento.

This court affirmed the juvenile court's assumption of jurisdiction, finding substantial evidence that mother had been impeding K.S.'s mental health treatment.  (*In re K.S.*, 244 Cal.App.4th 327, 336.)[2]  Mother had never secured specialized therapy for K.S.'s reactive attachment disorder, and she had frustrated K.S.'s treatment with her mental health provider.  (*Id.* at p. 338.)  Mother had rejected the provider's assessment that K.S. was not a danger to herself or others, and even after a three-day cooling off

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Our first opinion provides a detailed backdrop to this dependency action.  To summarize, K.S. was six when mother adopted her.  (*In re K.S.*, *supra*, 244 Cal.App.4th at p. 330.)  When K.S. was nine an adoption program assessment identified problem behaviors including chronic lying and stealing, property destruction, aggression, and difficulty with peers.  (*Ibid.*)  K.S. was diagnosed with reactive attachment disorder, attention deficit disorder, post traumatic stress disorder, and a learning disorder.  (*Ibid.*) In seventh grade K.S. was carrying knives for protection, and her at-risk behaviors escalated when she entered high school.  (*Id.* at pp. 330–331.)

period, she had refused to take K.S. home after county mental health professionals refused to hospitalize her.

## A.   THE SIX-MONTH STATUS REVIEW REPORT

According to the Agency's six-month status review report, K.S. was attending both individual and family therapy in Sacramento, addressing emotions, communication, healthy family dynamics, boundaries, self-esteem, and safety issues.  K.S. was struggling with behavioral and emotional issues and her relationship with mother.  Her family therapist identified attachment issues between K.S. and mother attributable "in large part to [] mother's insecure attachment and emotional developmental delay from her own adoption."  With four family sessions completed, that therapist reported to the social worker that K.S. and mother were engaged and working on improving communication.

The family therapist recommended that mother and K.S. continue therapy to facilitate the mother-child relationship, and that mother complete Neurofeedback treatment.  Although mother and K.S. has made some progress in reducing tension between them, the therapist reported slow progress "due to [mother's] delayed emotional state."  The therapist described mother as having "Adjustment Disorder with mixed emotional features."  In her opinion mother did not have "enough communication and emotion regulation skill[s] to manage, without incident, unsupervised visitation beyond perhaps two hours each week."

The social worker reported that mother had made minimal progress addressing her challenging behaviors, and mother's behavior continued to cause conflict with K.S.  The social worker described supervised visits where mother "continued to try to take control and be demanding over conversations and activities."  That disruptive behavior made K.S. anxious, and mother "continuously needed to be redirected during the visits."  Mother became upset over K.S.'s class schedule during an August visit, demanding that changes be made immediately.  Mother refused to drop the subject and K.S. asked that

3

the visit end because of mother's behavior. In the social worker's opinion, mother and K.S. "need to be able to communicate in a healthy manner" to keep K.S. safe from harm.

Later in August K.S. felt the visits were going okay, even though she and mother would argue because mother would talk without listening. Still, K.S. felt they were communicating better, and she asked that the case be dropped.

Mother provided a written statement to the Agency in early August, chronicling the progress she had made with her mental health issues. She had attended depression and mood management group therapy, individual and family therapy, and Neurofeedback therapy. She described a 12-session parenting class that she had completed, and noted regular phone calls and weekly visits with K.S. She described K.S.'s adjustment to Sacramento as positive, crediting herself with locating appropriate mental health services for K.S. in Sacramento. She announced that her job transfer to Sacramento had been approved with a September 1 start date, and that her house in San Benito County was on the market. She requested dismissal of the dependency action, asserting that she posed no risk to her daughter.

**B.    THE SIX-MONTH REVIEW HEARING**

Mother appeared in court on August 24, 2015 for the six-month review hearing. Prepared to submit on the status report, the Agency recommended that K.S. continue as a dependent of the court with continued family reunification services provided to mother. Mother and K.S. were present, and K.S. reported that she wanted to return to mother. The court granted mother a one-week continuance to review the status report. Mother's attorney asked the court whether mother needed to be present at the next setting "if we're going to submit." He said it was "fairly likely that we'll set the matter for a trial — for hearing," but he also cautioned "[m]y anticipation is we may reach a resolution and submit, but I can't say that right now for sure." The court instructed mother to be present unless her attorney would only be setting the matter for a contested hearing.

4

Mother did not appear at the continued hearing on August 31 because she was in Sacramento engaging in reunification services. The Agency restated its recommendation and submitted on the report. Mother's attorney also submitted, commenting: "After careful and in-depth discussion with my client and in fact a discovery request, we are going to submit." Counsel for K.S. submitted on behalf of K.S., who was not present.

The court ruled: "In evidence is the status review report filed August 21st, 2015, and I've read that, and I will adopt the recommended findings and orders and incorporate the proposed revised case plan for the six-month review hearing." Those findings included findings that reasonable services designed to help mother overcome the problems which led to K.S.'s initial removal and continued out-of-home care had been provided to mother; mother had participated regularly in court-ordered treatment programs; mother had made minimal progress toward alleviating or mitigating the causes necessitating K.S.'s out-of-home placement; and returning K.S. to mother would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of K.S. The court continued K.S. as a dependent of the court, continued family reunification services to mother, and approved an updated case plan. Because mother had had some problems during visits, the court ordered supervised visits (instead of the recommended unsupervised visits) for two hours per week with Agency discretion to increase the frequency and duration of those visits.

## II. DISCUSSION

### A. FORFEITURE

The Agency argues that mother forfeited her right to appeal the juvenile court's six-month status review rulings because she submitted on the Agency's recommendation that K.S. continue as a dependent of the court with family reunification services. In the Agency's view, mother's submission encompassed the Agency's recommendations because "[t]here were no objections made, there was no request for a contested hearing and there were no issues raised by [mother's] counsel." This position is not persuasive.

5

*In re Richard K.* (1994) 25 Cal.App.4th 580, 588 involved a dispositional hearing at which counsel responded "[y]es" to the court's express inquiry about whether the mother was "submitting on the recommendation?" The mother did not assert on appeal that her attorney had misspoken or that she had not intended to submit on the recommendation. (*Id*. at p. 589, fn. 15.) The reviewing court concluded that the mother had acquiesced to the social worker's recommended findings by submitting to those recommendations; accordingly, the mother had forfeited her right to challenge those findings on appeal. (*Id*. at pp. 589–590.) In so ruling, the *In re Rickard K.* court distinguished submitting on a social worker's report, which in its view was not uncommon in dependency proceedings, versus submitting on the social worker's recommendation. (*Id*. at p. 588.) By submitting on a report, the party is not necessarily agreeing to the social worker's recommended disposition, but only that the report constitutes the only evidence in the matter. (*Id*. at p. 589.) "In other words, the parent acquiesces as to the state of the evidence yet preserves the right to challenge it as insufficient to support a particular legal conclusion." (*Ibid*., citing *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237.)

In *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, the father submitted on a status review report and recommendation to terminate reunification services, but took exception to the court's finding that he had received reasonable reunification services. (*Id*. at pp. 804–805.) The *Steve J.* court concluded that the father had not forfeited his appellate challenge to reasonable services by submitting on the recommendation because he had objected to that finding. (*Id*. at p. 813.) The court observed further that, by submitting the matter on the report, the father had agreed the report was the only evidence in the matter. (*Id*. at p. 812.) Based on the uncontested report, the court upheld the finding that reunification services were reasonable. (*Ibid*.)

We cannot conclude on this record that mother submitted not only on the evidence but also on the Agency's recommendation. There was no express colloquy on the point

6

between the court and counsel, and inferring such a broad submission would be inconsistent with mother's continuing efforts to have the matter dismissed. Without some indication that mother was agreeing to the Agency's recommendation, we view her submitting on the report as merely signaling to the court that she was resting on the evidence submitted by the Agency. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 588.) Mother did not forfeit her right to appeal the post-dispositional orders.

**B.    SUBSTANTIAL RISK OF DETRIMENT**

The juvenile court must return a child to the physical custody of her parent at the six-month status review hearing, unless the court finds by a preponderance of the evidence that return would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being. (§ 366.21, subd. (e)(1).) Here, the court concluded that K.S.'s return to mother's custody would create a substantial risk of detriment to K.S., and it ordered that K.S. remain in the care and custody of the Agency. We review the detriment finding, supporting the order maintaining K.S. in the Agency's care, for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) Evidence is substantial if it is " 'reasonable, credible, and of solid value.' " (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1393.)

Mother argues that substantial evidence did not support the trial court's detriment finding because the report contained only general descriptions of mother such as "controlling and demanding" and "needs to become teachable"—statements that did not demonstrate with specificity how K.S. would be harmed if returned to her custody. We agree with mother that those references are not particularly informative and alone do not constitute substantial evidence of detriment. But mother overlooks key portions of the Agency's report that do adequately support the trial court's detriment finding.

According to the report, mother and K.S. have been engaged in ongoing family therapy in Sacramento. Their provider is a licensed family therapist who was chosen by mother and who specializes in attachment issues. After four sessions with mother, K.S.,

7

and K.S.'s aunt, the therapist recommended limiting mother's unsupervised visits with K.S. to two hours per week. The therapist reported that mother and K.S. "had done very little work in therapy and the processing was slow due to [mother's] delayed emotional state." She recommended limiting visitation because, in her professional opinion, mother lacked communication and emotion regulation skills to manage longer visits. The report also described difficult visits where mother had been demanding and fixated, and K.S. had felt anxious and wanted to end the visit. As much as K.S. had asked that the case be dropped, she also continued to acknowledge that she and mother still argue.

Mother relies on *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, where the court explained that the substantial risk of detriment standard was a high standard: "It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member." (*Id*. at p. 789.) She also cites *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738 where the court commented that "[t]he failure to 'internalize' general parenting skills is simply too vague to constitute substantial, credible evidence of detriment." (*Id.* at p. 1751.) But the record here is not vague, and the detriment finding is not based on mother being a less than perfect parent. The uncontested record shows both K.S. and mother struggling with mental health issues, and it contains the opinion of a mental health professional that mother and daughter should not visit without supervision for more than two hours per week. That evidence supports the finding that returning K.S. to mother's custody would create a substantial risk of detriment to K.S.'s emotional well-being.

## C.     REASONABLE REUNIFICATION SERVICES

If a child is not returned to her parent at a status review hearing, the juvenile court shall determine "whether reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent[.]"

8

(§366.21, subd. (e)(8).)  Here the juvenile court found that reasonable reunification services had been provided or offered to mother.  Mother argues in her appeal that the finding is not supported by substantial evidence and should be reversed.

We have jurisdiction to review post-disposition orders in dependency proceedings under section 395, subdivision (a)(1).  But our authority does not extend to mother's challenge to the isolated finding that reasonable reunification services have been provided because the juvenile court took no adverse action based on that finding. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1153–1154.)  We also recognize, as did the *Melinda K.* court, that post-disposition orders in dependency proceedings are comprised of numerous findings, that many of those findings are premised on related nonappealable findings made during previous hearings, and that those nonappealable findings are reviewable by petition for writ of mandate.  (*Id.* at pp. 1156–1157.)  Accordingly, we will exercise our discretion to treat mother's appeal of the reasonable services finding as a mandamus petition, and reach the merits of her claim. (*Id.* at p. 1157.)

Mother argues that while living in San Benito County and working in Santa Clara County, she "coordinat[ed] and travel[ed] over disparate counties to all service providers without assistance from the agency, despite the agency's stated responsibility in the original case plan … '[to] assist … mother with linkage to services and advocacy as needed[.]' "  Mother asserts that the Agency did not provide reasonable services because it did not assist her with transportation, scheduling, or relocating to Sacramento.

Reunification services are specifically tailored to the needs of the parent. (*In re Joanna Y.* (1992) 8 Cal.App.4th 433, 438.)  Mother's case plan, focused on developing parenting skills to communicate with K.S. and care for her special needs, required therapy and parenting education classes.  The plan required mother to participate in a mental health assessment, and to participate in a psychotropic medication evaluation if recommended by her treatment provider.  The Agency was responsible for assisting

9

mother with linkage to services and advocacy *as needed* to successfully achieve her case plan goals, monitoring mother's case plan progress, assessing the effectiveness of the provided services, and making additional referrals as needed.

Mother is a gainfully employed professional who has located and engaged in Agency-approved services, including parenting classes and mental health services. She does not lack personal transportation, and she has a demonstrated capacity to schedule appointments and visitations. Mother does not claim that her service providers are inadequate or that she is in need of additional referrals. Mother's relocation to Sacramento is beyond the scope of the Agency's case plan. But even assuming mother's move to Sacramento was necessary to reunify with K.S., there is no showing on this record that mother has needed any Agency assistance to assist her with that move. Substantial evidence supports the juvenile court's finding that reasonable services had been offered or provided to mother.

## III. DISPOSITION

The August 31, 2015 order maintaining K.S. in the care and custody of the Agency is affirmed. Mother's challenge to the reasonable reunification services finding, treated as a petition for writ of mandate, is denied.

10

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.



_____

Márquez, J.